Hamilton for Lyle.
After stating the circumstances, and commenting on them, and the affidavits of Ciason and Gardner, observed, that it was very -singular Gardner, without any knowledge of the contract of Dclard, Swan & Co. with the French Republic, or of Lyle’s intent, should deliver exactly under that contract, and write a letter acknowledging the very interest Lyle claimed under it, and that Ciason should pay him what he was thus entitled to. Gardner, without knowing the contract, goes further ; he asks Delard & Co. if the French government will be punctual in paying, and this, he adds, Ciason desired him to enquire about. Ciason too, ratifies the engagement of Delard & Co. and Gardner, with Lyle, by-adjusting the account with Delard & Co. and receiving under that account the two-thirds, by the very express terms of it, charged with the payment of the two-thirds of Lyle’s fifth. To argue on the assertions of Gardner, would be really superfluous. The referees must have thought Gardner had no right to bind Ciason. This idea is clearly repugnant to' every principle of law. He that entrusts another with general powers, must abide the result of his agent’s ..conduct. Therefore, though the re *334 Port in favor of Lyle, may and ought to stand, that in favor of Clason ought to be set aside.
TT , . , „ T liopkms and I roup contra. In making the reports m these causes, the referees were actuated by a wish to make the parties even, and leave them just as they were found.
For this purpose, the report in our cause, was intended as a set-off to the other, and to effect this object, counsel were desired to frame the reports in such d manner as might best obtain the desired end. The various facts appear in the affidavits before the court; but it is material to state, that the party who first made the application to disturb these reports, has not presented any original agreement, on which his suit is founded. Delard, Swan & Co. made a contract with the French government, for a certain quantity of pot and pearl-ashes : as these articles enter into the composition of gunpowder, it was necessary to have a neutral name in the business. It is difficult to say, what ought to be the true relative compensation for the protection a neutral character would afford ; but it is to be observed, that Delard & Co. were the real contractors ; Lyle a mere nominis umbra : for this, however, he says he is to have one full fifth, one-third of it to be .paid by Delard, Swan & Co. the other two-thirds by Clason. These terms, it is alleged, were stipulated by a formal contract, yet this contract, which Lyle must have had, is never produced ; on the contrary, instead of relying upon it, he rests on a letter received from Gardner. In addition to the inference to be drawn from this fact, it appears, that at the very time when this pretended contract was made, Lyle was in Europe, under an annual allowance from Clason, and actually his salaried agent, receiving wages for every service performed.
-A' doubt has been entertained, how far the court can, under the existing circumstances, with propriety set aside the report in favor of Clason: but, surely, whenever they clearly perceive that the referees have proceeded on a mistake, either of law or fact, this tribunal will always interfere. If the court will set aside an award, they will, . on the same principles, vacate a reportand, whatever *335 create iirgunient will induce them to do it in one of the now causes, will have equal force in the other ; for if the referccs have been mistaken in their endeavors to mutual set-offs, both reports will be set aside ; or, on the other hand, if they have acted properly, both will be confirmed; for the court will not, unnecessarily, do away what the referees have done. In making their determination, they considered that the power to sell, and the power to give away profits, were two things : to this latter, it cannot be contended, that the authority of an agent or a factor can extend. There is no question about an agent’s right over the property passed to him, but he cannot enter into collateral engagements; he may sell and Warrant a title ; but not give away the property. If he may, in any degree, do this, he may go on indefinitely, and make away with the whole. He may go on making contracts ruinous to his employer, and contrary to the purposes of his delegation. Under a power to sell, if he should he allowed even to exchange, can he be authorized to pay a difference ? The boundary of his power to bind, must be connected with that of his authority to sell; it must be confined to that, and will not warrant him to give away profits ; to pay another sum of money on another account than that of the sale. The point turns on whether Gardner had a competent authority to bind Ciasen, to pay two-thirds of a fifth of the profits. It was derived from the letter of instructions. That letter delegates only a general power. From the exercise of such a power, the claim cannot be supported. That a factor may sell by a broker, and give a commission, if customary, is not contested ; but it is contested, that a factor or agent, only a general authority to sell, can give away a tive part of the merchandize when it is sold; that he dip do so, there is not a dictum in the books. It would fact,to enable him to dispose of a portion of the property h^ is entrusted to vend. It would give rise to the most serious consequences ; a fraudulent collusion would completely destroy the interests of the principal, by enabling to constitute a sale regular in its form, the precise mode *336 which could not be easily foreseen. The intention of Clason’s agent must be taken into consideration, and the motives on which he proceeded, permitted to explain how meant to bind his principal. Gardner never knew the gratification to be paid Lyle actually was. The inducement he. had to consent to any, was, that he deemed the amount immaterial; for as Lyle was in the service of Clason, at a fixed salary, Gardner naturally concluded all Lyle’s labour would accrue to Clason. On the principles of natural justice, the demand cannot be substantiated. He lends his name to Delard, it being necessary to make use of a neuter. The douceur must certainly be according to the situation of the party. The letter to Clason, containing the terms of the contract, does not state the sum to be paid. It is obvious, therefore, that this was never intended. It was considered as too trifling to specify.
Gardner knew, when he left America, that Lyle was a salaried agent. This is not a case of good faith between an agent, and a person totally a stranger, and therefore the principal called on to pay j but we are called upon, on the strength of a little memorandum touched into the foot of an account. It is not to be forgotten that the referees were merchants, and well knew the course of trade and business, when the transactions took place, as well as the rights of an agent at a fixed annual allowance. The claim too, goes by the express name of a gratification ; and who ever heard of a partnership share (which this in fact is) ever being known by the appellation of a gratification ? When was «£600 sterling ever considered as a gratification for a person at a salary of «£150 per annum, New-York currency ? The referees might, therefore, have justly ejected the claim. No inference can be drawn from Gardner’s letter, speaking of a contract: he might have sailed on another. But it was not the mere matter of the contract that was referred; subsequent matters were added, not included in the two causes : this was by agreement of the parties, and how can the court say the full-'' claim-on ¡the .contract hsa pot been allowed^ .griten, it, might: *337 have been counterbalanced by damages and misconduct in the matter of the Hare ? This, therefore, being an application to" the equitable jurisdiction of the court, they will so mould and blend the two causes as will but answer the ends of justice ; and, if in the suit by Lyle, the report be set aside, the court will do it on terms, and vacate the report in that against him.
Clason declares he never heard what Lyle’s compensation was, till after the suit was brought. But can the court say, this particular claim ought not to be disallowed ? After the rules to refer, other matters were added and blended ; all contracts, “ express or implied" were submitted. It cannot.be said, there were not other claims
to extinguish this demand of two-thirds of the fifth. It might have been admitted, and liquidated by a counter claim. Referees and arbitrators may so consider the subject matter before them, as will best answer the ends of justice : they may take into view matters both of law and of fact; perform the offices of judges and jurors, and. are entitled to found their decision either on law, or principles of general equity. The whole of this was delegated to them, and they have determined, on a view of all matters in controversy blended together in one mass, all the objects in these two causes, even in that against both the Lyles, as consolidated before them. Whether they have been perfectly accurate in thus beholding them, is immaterial, if they did so consider them, have acted under that idea, and have attained the real ends of justice, though perhaps by extraordinary means. It was evidently the wish of the parties, to set all controversies between them fully at rest, and this has been accomplished. The court, therefore, will never say, that one report shall be confirmed, and the other set aside. The consideration of the report in the suit by Clason, might have influenced in the making up that', in the action against him. That it did so, is evident, because the reports were intended as mutual set-offs. Whether this could be supported on Strict legal reasoning, had been doubted; but. the spirit of *338 t^ie case in 8 D. & E.* might perhaps fully warrant the conduct of the referees. It may be a question also, how far Qardne could give such an interest, as might, per-Scraps, create a partnership between Lyle and Clason.
Harison and Hamilton in reply. If, in cases of full and before juries, this court will interpose, xyhen a verdict has been rendered on an evident mistake the law, they certainly will-do so in the case of a report made by referees, however appointed. That this reasoning applies to the suit of Lyle v. Clason is manifest, and it will, therefore, be sent for further examination. With respect to the contract made between Lyle, and Gardner, the agent of Clason, it is for the court to determine whether it be obligatory or not. The affidavits on the part of Clason, do not state that he was ignorant-of the contract with the French government, but of the claim of Lyle. It appears from Lyle’s deposition, and is not controverted, that in March, 1 f94, letters were written by Lyle and Swan, informing Clason of the contract; of Lyle’s right, and that he (Clason) might share, if he thought proper. The letters were produced, and that they were received, Clason’s conscience would not let him negative. There was a stipulation to compensate, with a share of the actual profits, for the use of the neutral name of Lyle; when these profits were ascertained, the righ t of Lyle attached. There is, to be sure, no express recognition by Clason of the contract, but in the Sept, following, the date of Lyle’s letter, Gardner arrives in France with exactly such a cargo as the contract demanded. Are there not circumstances enough, to think lie went there for the purpose of acting under it ? But even allowing there are not, does not. the letter of instructions substitute Gardner as owner of the property he carried, and invest him with all Clason’s power over it ? He is to' exercise his judgment; do his best; sell for French brandy ; sell to the French government, &c.; he had therefore a right to make any contract under the words of the letter. He arrives in France with a power ta dispose ; he finds Delard possessed of a contract, in the name of Lyle, under which, the power to dispose may be
*339 Exercised with great advantage. He docs exercise it, re-O ’ ceives the emolument, settles with Delard & Co. but refuses to do so with us. The inquiry then is, had Gardner a power, and has he exercised it ? That he had, and has, no doubt can be entertained; and as little, that it was under our contract; for the affidavit subsequently made by Gardner, does not deny, but admits the fact. He says, however, that he knew not what the gratification was : this is extraordinary: he seems to have forgotten his own letter after a very few months ; and though that does not specify the exact sum, the two-thirds for which he mentions Clason is to settle, it affords an internal evidence that he did know it, much stronger than his own assertion to the contrary. Gardner’s letter of the 7th December, 1794, particularizes two-thirds, and gives an account of the sales. Allowing, however, Gardner not to be apprized of the exact sum, as Lyle’s right was ascertained and perfected under the contract to which Gardner consented, acceding to the payment of two-thirds by Clason, it follows Clason must be bound. The rule is, that he who places confidence, shall sufier by the abuse of that confidence ; Clason, therefore, and not Lyle, is to be the loser by Gardner’s actions. It is extraordinary that Clason should have remained ignorant of the amount of Lyle’s claim, four years after Gardner’s return and rendering an account of his transactions. If Gardner then, having an authority to bind Clason, did so, and Clason has received the benefit of that transaction, Lyle’s right is perfect. The assertion of his being a salaried agent, does not aflect the claim. His time of service expired in September. Beyond that, Clason himself, allows no salary, and Gardner’s letter is dated in December. Gardner himself acknowledges Lyle’s right, by telling Delard to pay one-third of it. Had it been otherwise, Gardner would have said, you are not to pay the third of the fifth to Lyle, but to Clason, for whose benefit Lyle is acting. There is a further proof in the letter to Lyle. Gardner there says, “ Mr. Clason is to settle with you for <c two-thirds.” Here then is a clear established right in Lyle to receive from Clason, two-thirds of th<j fifth óf thq *340 whole profits. If so, the arbitrators have been guilty of a? mistake, in point of law, in considering Gardner unaut’norized to bind Clason, and this the court will assuredly set right. There is also another ground on w hich they clearly erred ; for if they have blended the reports in the two causes, or made one enter into the composition of the other, they are manifestly wrong. There is no evidence of. any thing against Lyle’s right, but the demands in the cause against him and his brother. Though both causes were referred, the referees have not any right to blend matter extraneous to the respective suits. Robert Lyle’s action is for his own separate account. That of .Clason against Robert and John Lyle, is against the partnership, and the one cannot he set off against the other, being in different rights. This is very wide from the case of a surviving partner, where the rights and duties centre in one person. The agreement does not alter this, for it was merely to allow of such matters as were admissible against the same parties, though not specifically proceeded for ; to settle all disputes for which actions might lie instituted against the respective defendants; to allow of damages arising from breach of contracts, express or implied, by the Lyles, to be settled under the reference of the suit against them, in which counts were used not applicable to actions for damages, but never to permit one suit to be set .off against the other, or make Robert Lyle give up the her nefit of his claim against Clason. They did not even take it into consideration, as they considered it not due ; the report, therefore, in favor of Robert and John Lyle, may-well be suffered to remain, and that in favor of Clason be set aside ; for the amount of the profits claimed from, him not being taken into consideration in the accounts by the referees, now remain unsettled. If, therefore, without in-eluding this demand, Clason has not any demand against Robert and John Lyle, the report does not prevent Robert from having a demand against Clason. Besides, it is evident the contract must have been known to Clason and Gardner, by the latter’s expressing an intention of return-ing with the residue. The not mentioning it in the letter *341 of instructions, was to avoid the risk of capture and con- . 1 dcinnation ; rates that were sure to attend a cargo of a contraband nature, going under an avowed contract with French government. The receipt by Clason, of the proceeds of the cargo, is a ratification of every contract which it was made, and no disavowal of Gardner’s authority can be permitted. Clason enjoys the benefit, and if any charges do accompany the agreement, it is to be taken cum onerc. The allowance of the account by Delard, Swan & Co. is conclusive on the terms.
Lewis, C. J. delivered the judgment of the court.
These actions were referred under rules of court to three referees, who have reported in each against the respective plaintiffs, declaring nothing due on either side. Motions are now made to set aside the several awards.
In the first cause, in which Lyle is plaintiff, the application is founded on a presumption that the referees have been mistaken in point of law. That they have either rejected a contract entered into by the defendant’s ship-master and consignee, as not obligatory on his principal, or have set off the balances found for the plaintiffs, in the respective causes against each other.
To this the defendant answers, that he was not bound by the engagement of his ship-master, who was also his consignee, and that if the referees have made such offset, they were justified on principles of law, and by an agreement entered into between the respective attornies.
As far as the facts can be collected, from affidavits and documents furnished the court, they are these: That the. Lyles being engaged in busines in France, were charged with some commercial concerns of Clason, on which he claims a balance of account, and on which they deny any thing to be due. . That Robert Lyle, while in France, ws? employed by the house of Delard, Swan & Co. there established in business to negotiate a contract, for the supply of certain quantities of pot and pearl-ashes to fhe French government, which he effected, and for which they were to allow him one-fifth of the profits. That the Company, as well as Robert Lyle, wrote to Mr.. Clason h% *342 March 1794 acquainting him. with their contract, and proposing to him to make shipments thereon. That in September, a vessel called the Joseph, belonging to the plaintiff, arrived in France loaded with ashes, consigned Gideon Gardner, the master, who had general instructions to sell to the government, or to individuals, at his election, That Gardner, after making enquiries as to the government’s punctuality, agrees with Delard, Swan & Co-, to turn in his cargo under their contract, which is accordingly done, and neats a profit of <£6,800 11 8 sterling ; whereof Clason received two-thirds in consideration of his having made the advances, and the house of Delard, Swan & Co. one-third. On the adjustment of this account, it appears that the Company and Clason were to account to Robert Lyle for his one-fifth, according to the proportions of profits by them respectively received.
Captain Gardner’s powers being discretionary, he was perfectly justifiable in making the disposition he did of the cargo entrusted to him* and even if he was not, it does not appear that Mr. Clason ever denied that transaction his sanction, but that on the contrary, he has received by remittances to1 Bird, Savage & Bird, of London, the proceeds of the cargo, including his proportion of the proy fits. Under these circumstances, there can be no doubt that Captain Gardner, having turned in his cargo under the contract, bound Mr. Clason to the fulfilment-of the terms of that contract; and the latter, having received the full two-thirds of the profits of the adventure, under the 'stipulation made by his agent, that he should account to Lyle for two-thirds of his douceurK or whatever else it may be called, (for names will not alter the essential quality of the thing) he is bound to perform such stipulation.
If, therefore, the referees have not admitted this claim, they have erred as to the Jaw, and the award ought to be set aside,
If, on the contrary, they have admitted it, then they must have allowed a balance found due to Clason in the other suit, as a set-off against it. This also, is incorrect; for the- suitp pre not between the same parties, and ¿he *343 partnership funds should have been first appropriated to ... . ' it r the discharge of the partnership debts. The agreement between the attornies, does not authorize such set-off. Its only object, is the admission of certain demands which would not fall within any of the counts in the respective declarations, in order to avoid further litigation.
The award therefore, in each suit, ought, in my opinion, to be set aside. The one against Clason, for the reasons above-mentioned, and the one in which he is plaintiff, because there is a probability that the referees found a balance there due to him, which he would otherwise" lose the benefit of. The judgment of the court is, that both awards be set aside.

 Glaister v. Hewer & ors. 8 D & E. 69, is it is pressumed the case alluded to; but it seems hardly to bear out the inference